## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KJET Direct, LLC, d.b.a. Hogworkz,

                Plaintiff,

v.

Bandon Damon Video LLC and
Brandon Damon,

                Defendants

Case No. 25-cv-11271

JURY TRIAL DEMANDED

## COMPLAINT

KJET DIRECT, LLC, d.b.a. Hogworkz ("Hogworkz"), by and through its undersigned attorneys, hereby bring the present action against Brandon Damon Video LLC and Brandon Damon and state as follows.

### I.     THE PARTIES

1.     Plaintiff, Hogworkz, is a Limited Liability Company, organized under the laws of the state of Michigan.

2.     Hogworkz has a principal place of business at 5936 Ford Ct Brighton, MI 48116.

3.     Defendant, Brandon Damon Video, LLC ("BDV") is a Limited Liability Company organized under the laws of the state of Michigan.

1

4.      BDV has a principal place of business at 5891 High Point Ct., Brighton, MI, 48116.

5.      Brandon Damon ("Damon") is an individual.

6.      On information and belief, Damon is a resident of 5891 High Point Ct., Brighton, MI, 48116.

## II.    JURISDICTION AND VENUE

7.      Hogworkz brings this action under The Copyright Act, Title 17 of the United States Code, and under 28 U.S.C. §§2201 and 2202, to obtain a declaratory judgement of non-infringement with respect to various videos commissioned by Hogworkz from Brandon Damon and his company Brand Damon Video LLC.

8.      This Court has original subject matter jurisdiction over the copyright-related claim pursuant to the provisions of the Copyright Act, 17 U.S.C. § 501 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive copyright claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

9.      This Court has supplement jurisdiction over the contract and state law tort claims pursuant to 28 US.S.C. § 1367 because those claims are so related to the copyright claims in the action that are within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.    Hogworkz commissioned BDV to record four videos.

11.    BDV recorded Ep1_Hogworkz_paint__MAIN1_3840x2160 ("Episode 1").

12.    Episode 1 is an audio-visual recording.

13.    Episode 1 is subject to the Copyright laws of the United States.

14.    BDV    recorded    Ep2_Hogworkz_warehouses_MAIN1_3840x2160 ("Episode 2").

15.    Episode 2 is an audio-visual recording.

16.    Episode 2 is subject to the Copyright laws of the United States.

17.    BDV recorded Ep3_Hogworkz_R&D_MAIN1_3840x2160 ("Episode 3").

18.    Episode 3 is an audio-visual recording.

19.    Episode 3 is subject to the Copyright laws of the United States.

20.    BDV recorded Ep4_Hogworkz_3840x2160 ("Episode 4").

21.    Episode 4 is an audio-visual recording.

22.    Episode 4 is subject to the Copyright laws of the United States.

23.    BDV and Damon (collectively "Defendants") have asserted that Damon is the author of Episode 1, Episode 2, Episode 3, and Episode 4 (collectively "the Episodes").

24.     Defendants have asserted that BDV is the owner of the copyrights to each of the Episodes.

25.     BDV granted Hogworkz a lifetime non-exclusive, non-transferable license to use the Episodes on YouTube.com and elsewhere ("the License" or "Hogworkz' License").

26.     Defendants interfered with Hogworkz' License by filing claims of copyright infringement with YouTube.

27.     Damon was the active, moving, force behind the filing of the copyright infringement claims with YouTube.

28.     Damon knew that BDV had granted Hogworkz the License, and intentionally interfered with Hogworkz enjoyment of the License by purposefully filing the false complaints with YouTube that accused Hogworkz of violating BDV's copyrights in the Episodes despite Damon's knowledge that BDV had granted Hogworkz the License.

29.     Defendants knew that Hogworkz had a business relationship with YouTube and that Hogworkz expected to continue to engage in business with YouTube through the posting of videos, including Episodes 1-4, which YouTube would make available to the public.

30.     Defendants knew that Hogworkz YouTube channel include a host of videos that were not owned by either Defendant and to which neither Defendant had any right or claim (the "Hogworkz Videos").

31.     Defendant knew and intended that filing complaints with YouTube over the Episodes would cause YouTube to shut down the entirety of the Hogworkz YouTube channel, including shutting down the availability of the Hogworkz Videos.

32.     As a direct result of Defendants' actions, YouTube removed Episodes 1-4 from the Hogworkz YouTube channel and shutdown the Hogworkz YouTube channel.

33.     As a direct result of Defendants' actions, neither the Episodes nor the Hogworkz Videos are available for viewing by the public on the Hogworkz YouTube channel.

34.     As a direct result of Defendants' actions, Hogworkz has suffered and continues to suffer ongoing and irreparable damage.

### III.    FACTS PERTAINING TO ALL CLAIMS

35.     In December of 2023, a representatives of Hogworkz met with Damon to discuss the possibility of Defendants performing some video work for Hogworkz. Ex. 1 (Message 1 of 9).

36.     Exhibit 1 is a true and accurate email string between representatives of Hogworkz and Defendants.

37.    At that time, Damon held himself out as a representative of Breaker Digital Marking.  Ex. 1 (Message 2 of 9).

38.    Damon provided Hogworkz with a quote that each episode filmed would be between $2200 and $3000. Ex. 1 (Message 3 of 9).

39.    Defendants provided Hogworkz with a proposed contract on December 11, 2023.  Ex. 1 (Message 3 of 9); Ex. 2, (the "2023 Agreement").

40.    Exhibit 2 is a true and correct copy of Defendants' proposed 2023 Agreement.

41.    The 2023 Agreement stated:

**3.    OWNERSHIP**

Except as otherwise provided herein, Producer owns all rights, title and interest in and to the media(s) which are the subject of this Agreement, including all copyrights therein as well as in and to all the exposed negatives, positives, out takes and raw clips. Producer grants Client a one year non-exclusive, non-transferable license to use the Deliverable(s) as specified in the project summary and Addendum A Production Specifications Form.

Ex. 2.

42.    Hogworkz rejected the 2023 Agreement.

43.    In response to receiving the 2023 Agreement, Hogworkz informed Defendants that "we [Hogworkz] want to be able to post any and all footage obtained our or [sic, on our] site, socials, and possibly edit sort videos from it in the future." Ex. 1 (Message 4 of 9).

44.     Defendants relented and confirmed in a follow-up email that "We can remove the time limit of '1 year nonexclusive' as it reads under #3 when it comes time to signing [sic] the agreement, and grant a lifetime use for the deliverables to Hogworkz." Ex. 1 (Message 7 of 9).

45.     Thereafter, Defendants increased the price to $3200 per episode.  Ex. 1 (Message 9 of 9).

46.     Damon, now representing Brandon Damon Video LLC, sent Hogworkz an invoice (Invoice #00064) on January 13, 2024 for Episode One. Ex. 3.

47.     Exhibit 3 is a true and accurate copy of the Invoice #00064 and a production agreement Defendants sent to Hogworkz.

48.     The "deliverable" was for "One long form Episode video, and three :30-1:00min reels."  Ex. 3.

49.     The invoice included a column for any "discount." Ex. 3.

50.     The invoice did not include any discount. Ex. 3.

51.     Attached to Invoice #00064 was a "Production Agreement."  Ex. 3.

52.     The Production Agreement included a "project summary" of 8-12 episodes. Ex. 3.

53.     However, the Production Agreement did not include any Total Project Cost.

54.     The Production Agreement did not include any amount due upon signing of the contract.

55.     The Production Agreement did not identify any amount due upon approval of any storyboard and script.

56.     The Production Agreement did not include any amount due upon final completion and delivery of all media.

57.     Page 2 of the Production Agreement included the following clause regarding ownership (Ex. 3):

**3.     OWNERSHIP**

Except as otherwise provided herein, Producer owns all rights, title and interest in and to the media(s) which are the subject of this Agreement, including all copyrights therein as well as in and to all the exposed negatives, positives, out takes and raw clips. Producer grants Client a lifetime non-exclusive, non-transferable license to use the Deliverable(s) as specified in the project summary and Addendum A Production Specifications Form.

58.     Pursuant to Paragraph 3, BDV granted Hogworkz a lifetime non-exclusive, non-transferable license to the Episodes Hogworkz paid BDV to produce and which BDV delivered to Hogworkz. Ex. 3

59.     Pursuant to Page 4 of the Production Agreement, it was the obligation of both Hogworkz and BDV to determine a production schedule. Ex. 3

60.     Hogworkz and Defendants scheduled the production of a first video Episode.

61.　Defendants delivered the first Episode to Hogworkz.

62.　Hogworkz paid BDV $3200 for the first Episode.

63.　Hogworkz fully satisfied Invoice #00064.

64.　Hogworkz and Defendants scheduled a second Episode.

65.　Defendants issued Invoice #00065 dated March 7, 2024 for the second Episode.  Ex. 4.

66.　Exhibit 4 is a true and correct copy of Invoice #00065.

67.　The "deliverable" for Invoice #00065 was for "One long form Episode video, and three :30-1:00min reels."  Ex. 4

68.　Invoice #00065 included a column for any "discount." Ex. 4.

69.　Invoice #00065 did not include any discount. Ex. 4.

70.　Hogworkz paid BDV $3200 for the second Episode.

71.　Defendants delivered the second Episode to Hogworkz.

72.　Hogworkz fully satisfied Invoice #00065.

73.　Hogworkz and Defendants scheduled a third Episode.

74.　Defendants issued invoice #00066 dated March 11, 2024 for the third Episode.  Ex. 5.

75.　Exhibit 5 is a true and correct copy of Invoice #00066.

76.　The "deliverable" for Invoice #00066 was for "One long form Episode video, and three :30-1:00min reels."  Ex. 5

77.     Invoice #00066 included a column for any "discount." Ex. 5.

78.     Invoice #00066 did not include any discount. Ex. 5.

79.     Defendants delivered the third Episode to Hogworkz.

80.     Hogworkz paid BDV $3200 for the third Episode.

81.     Hogworkz fully satisfied Invoice #00066.

82.     Hogworkz and Defendants scheduled a fourth Episode.

83.     Defendants issued Invoice #00067 dated June 6, 2024 for the fourth Episode.  Ex. 6.

84.     Exhibit 4 is a true and correct copy of Invoice #00067.

85.     The "deliverable" for Invoice #00067 was for "One long form Episode video, and three :30-1:00min reels."  Ex. 6.

86.     Invoice #00067 included a column for any "discount." Ex. 6.

87.     Invoice #00067 did not include any discount. Ex. 6.

88.     Hogworkz paid BDV $3200 for the fourth Episode.

89.     Defendants delivered the forth Episode to Hogworkz.

90.     Hogworkz fully satisfied Invoice #00067.

91.     Scheduling and working with Defendants became increasingly difficult for Hogworkz.

92.     Accordingly, on August 5, 2024, Hogworkz informed Defendants that it would let Defendants know if and when it needed Defendants for filming in the future.  Ex. 7, message 2 of 12.

93.     Exhibit 7 is a true and correct copy of an email string between Defendants and Hogworkz.

94.     Approximately six weeks later, on September 18, 2024, Defendants asserted that its pricing for which it had billed Hogworkz on a per-episode basis through individual invoices #00064-67, was based on "producing a total of 8-12 episodes" and "that includes the value of Hogworkz being able to use & share the material with your partners for a lifetime." Ex. 7, message 3 of 12.

95.     Defendants asserted "If we don't fulfill our agreement within this year, we'll need to decide what you'd like to do with the four episodes and reels currently in circulation on behalf of Hogworkz."  Ex. 7, message 3 of 12.

96.     Defendants later asserted that the individual invoices were "discounted based on completing 8-12 episodes. Packaged pricing" and threatened that "the videos will not be able to be used by Hogworkz forever." Ex. 7, message 5 of 12.

97.     Defendants sent Invoice #00068 in which Defendants demanded $12,771.50 in exchange for performing no work at all.  Ex. 8.

98.     Exhibit 8 is a true and correct copy of Invoice #00068.

99.   Indeed, Invoice #00068 listed as the Deliverables "none. Further use of The Work Deliverables." Ex. 8.

100.   However, Hogworkz had already paid for all prior deliverables, and already had a lifetime non-exclusive license to the prior deliverables.

101.   Thereafter, Defendants embarked on a willful campaign to interfere with Hogworkz business relationship with YouTube.

102.   Hogworkz YouTube channel had over 10,000 subscribers. Ex. 9.

103.   Exhibit 9 is a true and correct copy of a communication from YouTube confirming Hogworkz subscribers.

104.   Defendants filed a copyright complaint with YouTube asserting infringement by Hogworkz of Episode 1.

105.   By filing the copyright complaint, Defendants intended for YouTube to remove Episode 1 from the Hogworkz channel.

106.   Defendants knew that if it filed enough complaints, YouTube would disable the entirety of the Hogworkz channel, including all videos posted on the channel, even those that had no relationship to Defendants.

107.   On April 1, 2025, YouTube sent Hogworkz a notice that Defendants had filed a complaint, that the Episode 1 had been removed and warned that further strikes would lead to a shutdown of the channel.  Ex. 10.

108.   Exhibit 10 is a true and correct copy of a communication from YouTube to Hogworkz informing Hogworkz of the complaints filed by Defendants.

109.   Defendants did file the complaints set forth by YouTube in Exhibit 10.

110.   Defendants proceeded to file at least nine additional copyright complaints with YouTube.

111.   On April 3, 2025, YouTube sent Hogworkz a notice of termination of its YouTube Channel. Ex. 11

112.   Exhibit 11 is a true and correct copy of a communication from YouTube to Hogworkz informing Hogworkz of complaints filed by Defendants.

113.   Defendants did file the complaints set forth by YouTube in Exhibit 11.

114.   Defendants filed still more complaints with YouTube.

115.   On April 5, 2025, YouTube send Hogworkz another notice of termination of its YouTube Channel. Ex. 12.

116.   Exhibit 12 is a true and correct copy of a communication from YouTube to Hogworkz informing Hogworkz of complaints filed by Defendants.

117.   Defendants did file the complaints set forth by YouTube in Exhibit 12.

118.   On information and belief, when Defendants contacted YouTube, Defendants did not inform YouTube that Defendants had granted Hogworkz a lifetime license to Episodes 1-4.

119.   As a direct result of Defendants' interference, YouTube terminated the Hogworkz channel.

120.   Defendant's YouTube channel was a significant source of social engagement, advertising, and revenue for Hogworkz.

121.   Defendants' intentional interference with the Hogworkz YouTube channel has resulted in daily revenue losses for Hogworkz that are compounded with each passing day that the Hogworkz channel is not available to the public along with irreparable damage to Hogworkz social media presence and reputation due to Hogworkz inability to effectively communicate with its subscribers, fans, and customers.

122.   Defendants further filed a complaint with the Copyright Office based on Episodes 1-4. Ex. 13.

123.   Exhibit 13 is a true and correct copy of the complaint Defendants filed with the Copyright Office.

124.   On information and belief, Brandon Damon is the only individual associated with Brandon Damon Video LLC.

125.   On information and belief, Brandon Damon Video, LLC is the mere instrumentality of Brandon Damon and all substantive acts of Brandon Damon Video are carried out by Brandon Damon.

126. Brandon Damon, purporting to act as Brandon Damon Video, personally executed all substantive acts of Defendants set forth in this Complaint

127. More particularly, Brandon Damon used BDV to engage with Hogworkz and then to tortiously and intentionally file complaints with YouTube alleging copyright infringement by Hogworkz after having granted Hogworkz a lifetime license to Episodes 1-4, thereby causing damage to Plaintiffs.

128. BDV is merely the alter ego of Brandon Damon.

129. On information and belief, Defendants did not inform the Copyright Office that Defendants had granted Hogworkz a lifetime license to Episodes 1-4.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT

130. Hogworkz incorporates all of the foregoing paragraphs herein.

131. Defendants granted Hogworkz a lifetime license to Episodes 1-4.

132. Hogworkz fully paid all invoices for Episodes 1-4.

133. Due to the license Hogworkz owns, its display of any of Episodes 1-4 on YouTube is authorized and cannot constitute copyright infringement.

134. Additionally, Hogworkz requested the creation of each of Episodes 1-4.

135. Defendants created Episodes 1-4 pursuant to Hogworkz requests and delivered each Episode to Hogworkz.

136.   When Defendants created Episodes 1-4, they did so with the intent that the Episodes would be delivered to Hogworkz and that Hogworkz would distribute the Episodes through various channels, particularly through YouTube, for public consumption.

137.   Hogworkz owns a license in and to Episodes 1-4.

138.   Hogworkz is entitled to a determination that it does not infringe any copyright in any of Episodes 1-4, that it has a lifetime license in and to Episodes 1-4, that it is entitled to its attorneys' fees and all other relief within this Court's power to award.

## COUNT II
## TORTIOUS INTERFERENCE

139.   Hogworkz incorporates all of the foregoing paragraphs herein.

140.   Hogworkz maintained an ongoing business relationship with YouTube.

141.   At all relevant times, Hogworkz expected to maintain and enjoy its ongoing business relationship with YouTube.

142.   YouTube offered Hogworkz a platform for the positing of videos.

143.   Hogworkz posted videos on YouTube by posting on the Hogworkz YouTube channel.

144.   Based at least in part on the number of views that Hogworkz received for its videos, YouTube would pay Hogworkz.

145.   The Hogworkz YouTube channel offered a means for customers to interact with Hogworkz through posting comments and getting support for Hogworkz products.

146.   The Hogworkz YouTube channel was a significant source of advertising for Hogworkz that directly contributed to Hogworkz sales.

147.   Defendants were aware of the importance of the Hogworkz YouTube channel to Hogworkz.

148.   Defendants were aware that a condition of Hogworkz doing business with Defendants was that Hogworkz would be entitled to a lifetime license to use all deliverables from Defendants.

149.   Defendants agreed to granting Hogworkz a lifetime license for all deliverables.

150.   Defendants intentionally interfered with the business relationship between Hogworkz and YouTube by filing copyright complaints with YouTube over Episodes 1-4.

151.   Defendants intended that YouTube would shut down the entirety of the Hogworkz channel as a result of Defendants' complaints.

152.   YouTube did shut down the entirety of the Hogworkz YouTube channel due to Defendants' complaints.

153.   Defendants' interference has cause actual and irreparable damage to Hogworkz.

154.   Hogworkz is entitled to an award of all monetary, punitive, and equitable relief that is within this Court's power to award.

## COUNT III
## BREACH OF CONTRACT

155.   Hogworkz incorporates all of the foregoing paragraphs herein.

156.   Hogworkz contracted with Defendants for the production of Episode 1.

157.   Pursuant to the Parties' agreement, Defendants' deliverable was "One long form Episode video, and three :30-1:00min reels" for which Hogworkz was obligated to pay $3200.

158.   Pursuant to the Parties' agreement, Defendants granted Hogworkz a lifetime license to use the deliverable(s).

159.   Defendants breached the contract by unilaterally taking actions in contravention of the license, particularly filing one or more complaints with YouTube asserting that Hogworkz had no right to use or display Episode 1 on YouTube, causing YouTube to remove the Episode and ultimately terminate Hogworkz' YouTube channel.

160.   Hogworkz contracted with Defendants for the production of Episode 2.

161.   Pursuant to the Parties' agreement, Defendants' deliverable was "One long form Episode video, and three :30-1:00min reels" for which Hogworkz was obligated to pay $3200.

162.   Pursuant to the Parties' agreement, Defendants granted Hogworkz a lifetime license to use the deliverable(s).

163.   Defendants breached the contract by unilaterally taking actions in contravention of the license, particularly filing one or more complaints with YouTube asserting that Hogworkz had no right to use or display Episode 2 on YouTube, causing YouTube to remove the Episode and ultimately terminate Hogworkz' YouTube channel.

164.   Hogworkz contracted with Defendants for the production of Episode 3

165.   Pursuant to the Parties' agreement, Defendants' deliverable was "One long form Episode video, and three :30-1:00min reels" for which Hogworkz was obligated to pay $3200.

166.   Pursuant to the Parties' agreement, Defendants granted Hogworkz a lifetime license to use the deliverable(s).

167.   Defendants breached the contract by unilaterally taking actions in contravention of the license, particularly filing one or more complaints with YouTube asserting that Hogworkz had no right to use or display Episode 3 on

YouTube, causing YouTube to remove the Episode and ultimately terminate Hogworkz' YouTube channel.

168.   Hogworkz contracted with Defendants for the production of Episode 4

169.   Pursuant to the Parties' agreement, Defendants' deliverable was "One long form Episode video, and three :30-1:00min reels" for which Hogworkz was obligated to pay $3200.

170.   Pursuant to the Parties' agreement, Defendants granted Hogworkz a lifetime license to use the deliverable(s).

171.   Defendants breached the contract by unilaterally taking actions in contravention of the license, particularly filing one or more complaints with YouTube asserting that Hogworkz had no right to use or display Episode 4 on YouTube, causing YouTube to remove the Episode and ultimately terminate Hogworkz' YouTube channel.

172.   Hogworkz is entitled to an award of all monetary and equitable relief that is within this Court's power to award as well as Hogworkz attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Hogworkz prays for judgment against Defendants jointly and severally as follows:

1)   That Judgment be entered against Defendants finding that Hogworkz does not infringe any copyright of Plaintiff in Episodes 1-4.

2)    That Judgment be entered against Defendants finding that Defendants tortiously interfered with the business relationships and expectancies of Hogworkz.

3)    That Judgment be entered against Defendants finding that Defendants breached their contractual obligations with Hogworkz for Episode 1, Episode 2, Episode 3, and Episode 4.

4)    A determination that Brandon Damon is the alter ego of BDV.

5)    A determination that Defendants actions were willful, malicious, or in reckless disregard for Hogworkz' rights such that punitive damages are appropriate.

6)    Awarding Plaintiff actual damages.

7)    Awarding Plaintiff equitable relief due to irreparable harm suffered by the termination of its YouTube Channel.

8)    Awarding Plaintiff punitive damages.

9)    Entering an order compelling Defendants to take corrective action to reinstate Plaintiff's YouTube Channel.

10)   Awarding Plaintiff permanent injunctive relief, including an order precluding Defendants from representing to any third party that Hogworkz is infringing on any copyright for any of Episodes 1-4.

11)   Awarding Plaintiff its cost and reasonable attorneys' fees.

12)   Awarding Plaintiff pre and post judgement interest on all monetary awards.

13)    Awarding Plaintiff any and all other relief that this Court deems just and

proper.


### JURY DEMAND

Plaintiff demands a trial by Jury.


Dated: May 1, 2025                    */s/ Matthew De Preter*
                                      Matthew De Preter

                                      Matthew De Preter (Illinois Bar ID
                                      6291503)
                                      ARONBERG GOLDGEHN DAVIS &
                                      GARMISA
                                      225 W. Washington St. Ste. 2800
                                      Chicago, IL 60606
                                      312-755-3153
                                      cdepreter@agdglaw.com


                                      James J. Sarconi
                                      Smith & Sarconi, PLC
                                      13900 Lakeside Circle, Suite 203
                                      Sterling Heights, MI 48313
                                      (586) 884-5420
                                      jsarconi@s2attorneys.com


                                      *Attorneys for Plaintiff*